Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000861
29-NOV-2013
08:23 AM

NO. CAAP-12-0000861

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
RONALD JESUS BONILLA, SR., Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 06-1-0577(1))

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant Ronald Jesus Bonilla, Sr. (Bonilla) pleaded guilty to Theft in the Second Degree in violation of Hawaii Revised Statutes (HRS) § 708-831 (Supp. 2011) and Ownership or Possession of Firearm Prohibited in violation of HRS § 134-7(b) (2011). Bonilla was sentenced to a term of five years incarceration for the Theft conviction and ten years incarceration for the Ownership conviction with the sentences to run consecutively. Judgment was entered on September 19, 2012.[1]

---

[1] The Honorable Rhonda I.L. Loo presided.

Bonilla was initially charged with (1) Attempted Murder in the First Degree in violation of HRS § 705-500(2) (1993); (2) Kidnapping in violation of HRS § 707-720(1)(c) (1993); (3) Attempted Extortion in the First Degree in violation of HRS §§ 705-500(1) (1993) and 707-765(1)(a) (1993); (4) Robbery in the Second Degree in violation of HRS § 708-841(1)(a) (Supp. 2012); (5) Ownership or Possession Prohibited of Any Firearm or Firearm Ammunition in violation of HRS §§ 134-7(b) and (h) (2011); (6) Loaded Firearm on a Public Highway in violation of HRS § 134-26 (2011); and (7) Impersonating a Law Enforcement Officer in the Second Degree in violation of HRS § 710-1016.7 (1993).

On July 11, 2012, Bonilla pleaded guilty to the lesser offense of Theft in the Second Degree in Count 4 and the lesser offense of Ownership or Possession of a Firearm in Count 6. Attached to the written plea form was a letter from Bonilla's present counsel to the deputy prosecutor with the terms of the plea agreement for the entry of Bonilla's conditional plea.

On appeal, Bonilla argues a single point:[2] The Circuit Court of the Second Circuit (Circuit Court)[3] erred in denying his motion to suppress evidence because his seizure by the police "constituted an illegal warrantless arrest without probable cause or an illegal 'Terry stop' without reasonable suspicion." In order "[t]o justify an investigative stop, short of an arrest based on probable cause, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" State v. Barnes, 58 Haw. 333, 338, 568 P.2d 1207, 1211 (1977) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). In the determination of whether the search and seizure is reasonable, the court examines "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry 392 U.S. at 19-20. Hawai'i courts have "repeatedly applied the standard set forth in Terry." State v. Eleneki, 106 Hawai'i 177, 180, 102 P.3d 1075, 1078 (2004) (citation and internal quotation marks omitted). "[T]he reasonable suspicion test under article I, section 7 of the Hawai'i Constitution is generally measured on an objective standard[.]" State v. Bolosan, 78 Hawai'i 86, 94, 890 P.2d 673, 681 (1995).

Maui Police Department Lieutenant Jayson Rego (Lt. Rego) was in charge of the investigation in this case. By the time that he broadcasted an order over the police radio to stop Bonilla's vehicle, he had interviewed the complaining witness in this case (CW) who reported that he had been abducted from his employer's parking lot by two men posing as police officers; he had been handcuffed and driven across the island in an "older" Nissan Sentra gray or gray/blue in color that contained a black dashboard cover with an embroidered rose over the glove compartment; he was robbed of his cash and identification, beaten

---

[2]     In that context, Bonilla argues that the Circuit Court's Findings of Fact numbers 9, 13, and 15 were clearly erroneous. However, as Bonilla presents no argument supporting these contentions, they are waived. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7).

[3]     The Honorable Joel E. August presided.

and choked by the men, one of whom repeatedly suggested, "just pop him already" when he tried to escape from the vehicle; he then negotiated a deal with the men that, if he were released, he would meet them the following day at the same parking lot and give them $100,000; when he was released, he was told not to turn around or "we'll put one in your head" and if he did not bring the money "they would kill his whole family in front of him"; the larger of the two men sported a colorful tattoo from fingers to wrist on the back of his right hand and wore two gold rings, one of which was engraved with initials. The next day, shortly before the appointed time, a vehicle CW said "could be" the Nissan was seen, first driving so slowly on Honoapi'ilani highway that seven to eight vehicles passed it, then driving into a parking lot adjacent to the agreed location, then driving very slowly into the employer's lot, circling past CW who was sitting in his truck and parking facing him for a few minutes before leaving the lot; no other vehicle was seen entering the parking lot; that the registered owner of this vehicle was "Ronald Bonilla of Paia."

As the police had specific information from CW that crimes had been committed and tended to show that the person in this vehicle was at least involved, if not responsible for the crimes, they had reasonable suspicion to stop this vehicle. Bonilla contends that the Circuit Court erred when it concluded that the police had reasonable suspicion to stop him[4] because Lt. Rego's knowledge "cannot be imputed to Officer Antonio because Officer Antonio was not acting in concert with Lt. Rego

---

[4] Conclusions of Law (COL) 3 states:

Officer Antonio's seizure of Defendant was based upon Detective Rego's direct order to stop the car Defendant was driving. Detective Rego's communication to stop Defendant for an investigative procedure was based upon a reasonable suspicion that the Defendant was involved in criminal activity and might be armed. Officer Antonio's investigative stop and seizure of Defendant was not significantly more intrusive than if Detective Rego had performed the stop himself as the delay was 3 - 4 minutes from Detective Rego's appearance at the scene. Had Detective Rego performed the stop, probable cause for arrest would have been present immediately based upon Detective Rego's plain view observations of Defendant's physical similarities with the larger suspect (including his rings and tattoos) and the rose on the dashboard of Defendant's vehicle.

and was not being kept informed of the progress of the investigation." Bonilla cites to Barnes, 58 Haw. at 336-37, 568 P.2d at 1210-11 in support of his position. However, in Barnes, the arresting officer did not know whether the defendant had received the purchase money from the undercover officer nor whether the defendant had obtained the drugs from his supplier--although the arresting officer's assignment was to follow the defendant to confirm this--when he stopped the defendant. Id. Here, Officer Antonio stopped Bonilla on direct orders of Lt. Rego, who was in possession of the information constituting the reasonable suspicion for the stop. Barnes, 58 Haw. at 336 n.1, 568 P.2d 1210 n.1 ("Sufficient probable cause for the arrest would also exist where the police department transmits direct orders, based on information which would support an arrest without a warrant, to the arresting officer notwithstanding his lack of personal or first hand knowledge of all the facts.").

Pointing to the facts that after being stopped, he was called out of his vehicle and handcuffed, Bonilla argues that Officer Antonio exceeded the permissible scope of an investigatory stop. If "facts known to the police would warrant a person of reasonable caution to believe that the occupant is armed and dangerous and that the action taken is appropriate" an order out is permitted. State v. Nakachi, 7 Haw. App. 28, 37, 742 P.2d 388, 394 (1987) (citing State v. Joao, 56 Haw. 216, 221, 533 P.2d 270, 274 (1975)). Lt. Rego had been told by CW that the men who abducted him had made multiple death threats against CW and his family. More importantly, although CW did not report seeing a weapon, the threats made against him, "just pop him already" and "if you turn around we'll put one in your head," implied an ability to shoot CW. "Absolute certainty that the individual accosted is armed is not a necessary predicate to self-protective action[.]" State v. Madamba, 62 Haw. 453, 458, 617 P.2d 76, 79 (1980). It is reasonable to infer that a man who participated in an assault and death threats against CW the day before would appear at the agreed place to collect his money with the intent and means to enforce the agreement made with CW. Lt. Rego's knowledge of the suspects' previous behavior supported the warning in the police broadcast made by Lt. Rego that the

occupant of the vehicle may be armed and dangerous.

However, the handcuffing of Bonilla[5] after he was removed from his vehicle bears closer examination. Although handcuffing often heralds an arrest, see State v. Ketchum, 97 Hawai'i 107, 125, 34 P.3d 1006, 1024 (2001) (listing handcuffing as a factor in concluding an arrest has been made), it does not necessarily convert a stop into an arrest. United States v. Salas-Garcia, 698 F.3d 1242, 1249 (10th Cir. 2012) ("The use of handcuffs or placing suspects on the ground during a Terry stop 'do[es] not necessarily turn a lawful Terry stop into an arrest under the Fourth Amendment.'" (citation omitted)); United States v. Meadows, 571 F.3d 131 (1st Cir. 2009); United States v. Yang, 286 F.3d 940, 950 (7th Cir. 2002) (case did "not fall into the category of cases where the use of handcuffs transforms an investigatory stop into an arrest."); United States v. Kapperman, 764 F.2d 786, 790 n.4 (11th Cir. 1985), United States v. Taylor, 716 F.2d 701, 709 (9th Cir. 1983).

Nevertheless, the use of handcuffs can amount to an unreasonable seizure, and "[w]hether police conduct was 'reasonably related in scope to the circumstances which justified the interference in the first place,' Terry, 392 U.S. at 20, . . . . is a fact-sensitive inquiry and depends on 'the totality of circumstances in a given case.'" Salas-Garcia, 698 F.3d at 1249 (citation omitted); see also State v. Silva, 91 Hawai'i 80, 81, 979 P.2d 1106, 1107 (1999) (quoting Terry with approval) and State v. Ugalino, 107 Hawai'i 144, 154, 111 P.3d 39, 49 (App. 2005) ("The determination of whether a detention has turned into a de facto arrest requires an objective assessment of the totality of the circumstances."). "In determining whether a detention has turned into a de facto arrest, the court must not only evaluate how intrusive the detention was, but 'whether the methods used [by the police] were reasonable given the specific circumstances.'" Ugalino, 107 Hawai'i at 154, 111 P.3d at 49 (citation omitted.)

> Moreover, while no single factor, in itself, is dispositive as to when a temporary investigative detention

---

[5] It is unclear from the record exactly who placed the handcuffs on Bonilla. However, we are satisfied that this was done before Lt. Rego arrived at the scene of the stop.

has morphed into an arrest, the potential attributes of "arrest" clearly include such circumstances as handcuffing, leading the detainee to a different location, subjecting him or her to booking procedures, ordering his or her compliance with an officer's directives, using force, or displaying a show of authority beyond that inherent in the mere presence of a police officer, as well as any other event or condition that betokens a significant deprivation of freedom, "such that [an] innocent person could reasonably have believed that he [or she] was not free to go and that he [or she] was being taken into custody <u>indefinitely</u>[.]"

Ketchum, 97 Hawai'i at 125, 34 P.3d at 1024 (emphasis added; citation omitted).

Given this framework, it does not appear that Bonilla was arrested before Lt. Rego arrived at the scene. Lt. Rego broadcast orders to stop the Nissan, not to arrest the driver. Bonilla's detention lasted 3-4 minutes before Lt. Rego arrived. No interrogation or search was made prior to Lt. Rego's arrival. More importantly, the information given to Lt. Rego by CW supported the conclusion that, if the occupant of the vehicle was one of the men involved in the abduction of CW, he may have been armed and dangerous. Given the brevity of the detention and the lack of any evidence that the officers on the scene questioned or searched Bonilla before Lt. Rego's arrival to confirm Bonilla was the person he had just seen in the parking lot and described by CW, it does not appear that a reasonable person would have believed that he was to be taken into custody indefinitely.

Moreover, even if the action of handcuffing Bonilla exceeded the scope of police authority, no evidence was obtained as a result. Bonilla argues that because there was no reasonable suspicion to support even a "Terry stop," "all evidence seized and statements obtained subsequent to that illegal warrantless seizure must be suppressed as 'fruit of the poisonous tree' of that illegality." See State v. Prendergast, 103 Hawai'i 451, 454, 83 P.3d 714, 717 (2004); State v. Tominiko, 126 Hawai'i 68, 80-81, 266 P.3d 1122, 1134-35 (2011). However, these cases require that evidence "obtained from" or "as a result of" the illegal warrantless seizure must be suppressed, not all evidence subsequent, as Bonilla apparently asserts.

Finally, Bonilla has not identified any evidence seized or any statements obtained as a result of his handcuffing. Although Bonilla appears to contend that what Lt. Rego observed

at the scene of the stop was fruit of the poisonous tree, he does not argue that Lt. Rego's observations at the scene of the stop was a product of his being handcuffed. It is undisputed that when he arrived at the scene of the stop, Lt. Rego observed the tattoo and rings on Bonilla's right hand, as described by CW. This identification of Bonilla as the person described by CW was the last piece of information necessary to constitute probable cause for Bonilla's arrest, but it was not made possible by the handcuffing. The stop itself enabled this identification. Likewise, Lt. Rego observed the Nissan's dashboard cover as described by CW in plain view. See Tominiko, 126 Hawai'i at 80 n.6, 266 P.3d at 1134 n.6 ("The situation in the instant case is distinguishable from the one where a police officer attempts to improperly seize a person but observes contraband which the officer would have observed regardless of the attempt to seize.")

Because the initial stop and seizure of Bonilla constituted a valid investigatory stop, his detention was of short duration, and the fact that he was handcuffed did not enable the acquisition of any evidence, Lt. Rego's plain view observations of the suspect and the vehicle are not "fruit of the poisonous tree." Therefore, the Circuit Court did not err in denying Bonilla's motion to suppress evidence.

Therefore, the judgment entered on September 19, 2012 by the Circuit Court of the Second Circuit is affirmed.

DATED: Honolulu, Hawai'i, November 29, 2013.

On the briefs:

Michael Jay Green,
for Defendant-Appellant.

Artemio C. Baxa,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge